UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| RODGER CALVIN SERATT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:17CV00124 SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Rodger Calvin Seratt, a person in federal custody. On July 29, 2015, Seratt pled guilty to Making a False Statement, Theft of Government Funds in Case No. 1:14CR00083 SNLJ, and Tampering with a Witness in Case No. 1:15CR00058 SNLJ at a consolidated sentencing hearing on October 27, 2015, this Court sentenced Seratt to the Bureau of Prisons for a term of 41 months on all charges, a sentence within the sentencing guideline range. The sentences were affirmed on direct appeal in an unpublished opinion filed on March 14, 2017, Appellate Case No. 16-1097. Seratt's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## STATEMENT OF THE CASE AND FACTS RELEVANT TO THE PETITION

On August 21, 2014, a federal grand jury sitting in the Eastern District of Missouri returned a five-count indictment charging RODGER CALVIN SERRATT, (hereinafter "Seratt") with violations of: Title 18, United States Code, Section 1001(a)(2), making

false statements, and Title 18, United States Code, Section 641, theft of government property. DCD 2.[1] The federal grand jury returned superseding indictments on February 19, 2015 and May 28, 2015. DCD 40; DCD 59. The final superseding indictment included a charge of conspiracy to defraud, Title 18, United States Code, Section 371 in relation to the earlier charged violations of: Title 18, United States Code, Section 1001(a)(2), making false statements, and Title 18, United States Code, Section 641, theft of government property. DCD 59. During the pendency of the prosecution of criminal case number S2-1:14CR00083 SNLJ, on April 23, 2015, the federal grand jury returned an indictment charging Seratt with two counts of obstruction of justice pursuant to Title 18, United States Code, Section 1512. DCD 9, criminal case number 1:15CR00058 SNLJ.

As to the calculations of the advisory sentencing range, the parties agreed that six levels would be added pursuant to U.S.S.G. § 2B1.1(b)(1)(D) because the loss exceeded $30,000.00, and that two levels would be subtracted for Seratt's acceptance of responsibility. DCD 94, p. 10; DCD 64, p. 10, criminal case number 1:15CR00058 SNLJ. However, the plea agreement contained a dispute regarding two sentencing enhancements. The government argued that four levels should be added pursuant to U.S.S.G.§ 3B1.1 because Seratt was a leader and organizer of a criminal activity that involved five or more participants; and two levels should be added pursuant to U.S.S.G. § 3C1.1 because the defendant obstructed justice. DCD 94, p. 10; DCD 64, p. 10, criminal

---

[1] Except as otherwise noted, references to the district court docket (DCD) will be to the record in Case No. S2-1:14CR00083 SNLJ.

case number 1:15CR00058 SNLJ. Seratt initially opposed these enhancements, and the plea agreement set forth the parties' respective calculations. According to the government, the resulting offense level would be 16, but Seratt took the position that the total offense level would be 10. DCD 94, p. 11; DCD 64, p. 11, criminal case number 1:15CR00058 SNLJ.

In the presentence investigation report, the United States Probation Office disagreed with the parties' stipulation as to the amount of loss, and agreed with the government's positions regarding defendant's role in the offense and obstructive conduct. As to the loss calculation, the presentence investigation report established a loss of less than $30,000.00, resulting in a four level increase rather than six levels as stipulated by the parties. PSR, p. 11. The United States Probation Office based its imposition of the enhancement by stating that Seratt "was an organizer or leader of criminal activity that involved at least three participants but was otherwise extensive as he used the unknowing[] services of many other outsiders." PSR, p. 11. In support of the enhancement for obstruction of justice, the presentence investigation report cited facts relating to Seratt's obstructive conduct to corporate officers of his companies including his son, Rodger P. Seratt, and another family member, Karina Seratt (K.S.).

The presentence investigation report noted the following:

During the SSA-OIG's ongoing investigation of R.C. Seratt's theft of government funds, law enforcement identified individuals who had been designated as corporate officers for Ozark River Farms and SEMO Collections and who R.C. Seratt instructed as to the manner in which they should respond to queries by investigators for the SSA and court orders for the production of corporate documents. Specifically, on April 6, 2015, law enforcement served a federal grand jury subpoena on K.S. at her place of business. As the president of Ozark River Farms and SEMO Collections, K.S. was

3

requested to bring records relating to those businesses as well as other businesses which had been associated with Ozark River Farms and SEMO Collections. On or about April 10, 2015, R.C. Seratt obtained a motion from D.N. to quash the federal grand jury subpoena. With the intention of causing K.S. to mail the motion he procured from D.N. to the Clerk for the United States District Court for the Eastern District of Missouri and to not report to the grand jury as ordered. R.C. Seratt knowingly used corrupt and misleading conduct toward K.S. with the intention that K.S. withhold testimony and evidence from a federal grand jury on April 16, 2015.

    Further, R.C. Seratt engaged in misleading conduct toward his son, Rodger Payan Seratt with the intent to cause and induce R.P. Seratt to withhold testimony and documents from an official proceeding. Specifically, on May 6, 2015, R.C. Seratt instructed R.P. Seratt to falsely advise a federal grand jury that P.D. and D. M. were the corporations' attorneys and that they possessed the documents sought by the grand jury in their role as the corporations' attorneys.

PSR, pp. 9-10. The information regarding the obstructive conduct in the presentence investigation report closely mirrored that contained in Seratt's plea agreement. In that document, Seratt admitted that:

> [His] involvement with the companies extended to instructing individuals who had been designated as corporate officers… as to the manner in which they should respond to queries by investigators for the Social Security [Administration] and court orders for the production of corporate documents. On April 10, 2015, this included obtaining, on behalf of K.S., a motion to quash a federal grand jury subpoena through which the government sought business records of companies defendant directed. With the intention of causing K.S. to withhold the records from the federal grand jury, defendant instructed her to mail the motion to quash he procured for her to the Clerk for the United States District Court for the Eastern District of Missouri and the United States Attorney's Office.

DCD 94, p. 8; DCD 64, p. 8, criminal case number 1:15CR00058 SNLJ.

Seratt objected to the enhancements set forth in the presentence investigation report. Regarding the leadership enhancement, Seratt contended that he used the services of others in order to comply with the conditions of his supervised release that he not operate, manage or participate in any business without its written permission. DCD 107, p. 2; DCD 80, p. 10, criminal case number 1:15CR00058 SNLJ. He also asserted that the

4

business activity in which the individuals engaged was legitimate. DCD 107, p. 3; 80, p. 10, criminal case number 1:15CR00058 SNLJ. While objecting to the enhancement recommended to be imposed for obstruction of justice, Seratt was silent as to the applicability of the two level enhancement for obstruction of justice. DC 107, p. 3; DCD 80, p. 10, criminal case number 1:15CR00058 SNLJ.

With an offense level of 14 and a criminal history category of VI, the presentence investigation report established the applicable advisory guideline range as 37 to 46 months incarceration. PSR, pp. 12, 16, 24. Despite disagreeing with the two level enhancement for obstruction of justice in the plea agreement, Seratt's sole objection to the enhancements set forth in the presentence investigation report was to the four level enhancement for his role in the offense. DC 107, p. 3; DCD 80, p. 10, criminal case number 1:15CR00058 SNLJ. Rather than the offense level of 14 set forth in the presentence investigation report, Seratt argued that the applicable offense level was 10 due to the following calculations:

| | |
|---|---|
| Base Offense Level | 6 |
| Amount of Loss | +4 |
| Obstruction of Justice | +2 |
| Reduction for Acceptance of Responsibility | -2 |

DC 107, p. 3; DCD 80, p. 3, criminal case number 1:15CR00058 SNLJ.

While the government did not dispute the probation office's calculation of loss, it disagreed with the two level reduction for acceptance of responsibility on the grounds that Seratt made materially false statements to the probation officer in the course of the

5

officer's preparation of the presentence investigation report. DCD 106, pp. 2-3; DCD 80, pp. 2-3, criminal case number 1:15CR00058 SNLJ. The government also objected to the use of the "otherwise extensive" aspect of the four level role in the offense enhancement as the sole basis for its application. In addition to Seratt and the other three participants identified in the presentence investigation report, the government named four additional individuals who knowingly participated in the criminal activity upon which the convictions were based. DCD 106, p. 1; DCD 80, p. 1, criminal case number 1:15CR00058 SNLJ.

At the outset of the sentencing hearing, this Court inquired as to Seratt's understanding of the presentence investigation report. TR. Sentencing Hearing, p. 3. When Seratt complained that he had only received 30 minutes to discuss it with his attorney, he requested five minutes to address a single issue that had arisen. TR. Sentencing Hearing, p. 4. After receiving the time requested, Seratt advised that his concerns had been resolved, and that he went over the presentence report with his lawyer in detail. TR. Sentencing Hearing, p. 4. Seratt also informed this Court that he understood that the attorneys had agreed to withdraw their respective objections to the four-level enhancement for role in the offense and two-level reduction for acceptance of responsibility. TR. Sentencing Hearing, pp. 7-8. The resulting discussion was as follows:

> Court: Your lawyer has filed this objection on your behalf on the question of whether or not there should be a four-level increase because you were considered to be an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. You know the issue then, don't you.
>
> Defendant: No, Your Honor.

6

Mr. D'Agrosa: Your Honor, when we've discussed this, the otherwise extensive language is likely to be a finding of the Court.
Court: Right.

Mr. D'Agrosa: So to preserve acceptance of responsibility we're going to forego that objection and presentation of any evidence or argument.

Court: That's fine.

Mr. D'Agrosa: We've informally discussed this with the Court and Ms. Berry.

Court: Yes. Mr. Seratt, are you sure that this is what you want to do then?

Defendant: I don't want to do it at all, but I'm going to.

Court: Okay. I understand. You're doing it as a practical matter, I guess?

Defendant: Yes, sir, I am.

Court: All right. And with the understanding that we can have that hearing today, and the witnesses are prepared, and I want to make sure that you are truly waiving your right to present that one claim about that would generate a four-level increase in the sentencing guidelines. So, if that's what you're sure you want to do, I'll allow you to withdraw that objection.

Defendant: I discussed this with my attorney, and I trust his judgment, and we may not agree on everything, but this is what I want to do.

Court: Okay, I want to make sure it's your free and voluntary decision to do this.

Defendant: Yes.

Court: —after consultation with your lawyer?

Defendant: He didn't threaten me.

Court: Okay. You know what I mean. All right. With that then the Court will make a separate express finding, though, that based on the record presented to the Court and specifically the plea agreements that were filed in the two cases and the facts that were detailed within the plea agreements and the information gleaned from the presentence report as well that the four-level increase is warranted because the facts give rise to the conclusion that the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

> And so with that I will – the motions – or the objections to the presentence investigation report being withdrawn by both sides I'll review with you specifically the sentencing guidelines then.
> The total offense level is 14. The criminal history category is 6.

TR. Sentencing Hearing, pp. 9-11. After considering the arguments of the parties, this Court imposed a sentence in the middle of the applicable guideline range (37-46 months), that being 41 months incarceration. TR. Sentencing Hearing, p. 14.

At the conclusion of the consolidated sentencing hearing, this Court called Seratt's supervised release revocation case, criminal number 1:11CR00135 SNLJ, and determined that Seratt violated the terms and conditions of his supervised release. TR. Sentencing Hearing, p. 18. With a Grade B violation, and a criminal history category of III, Seratt was advised that the guideline range was 8 to 14 months incarceration. TR. Sentencing Hearing, p. 18. After neither party objected to the guideline calculation, the parties' recommendations were solicited. The government deferred to the Court regarding an appropriate sentence, and counsel for defendant sought a 12 month sentence that would be concurrent to the 41 month sentence previously imposed. TR. Sentencing Hearing, p. 19.

When this Court denied defense counsel's request for a concurrent sentence, and imposed a sentence of 8 months to be run consecutively with the 41 month sentence, Seratt's counsel argued that there had been a discussion about a concurrent sentence in an earlier conversation with the court. TR. Sentencing Hearing, p. 19, 21. This Court responded by denying the existence of any agreement to impose a concurrent sentence. TR. Sentencing Hearing, p. 21. At that juncture, the government noted that it had been

the only party to the conversation that had been asked for its position as to whether the revocation sentence would be consecutive or concurrent to the fraud and obstruction sentences. TR. Sentencing Hearing, p. 21. Without any further argument by the parties, or Seratt, this Court advised Seratt of his right to appeal in the three cases, and the hearing was concluded. TR. Sentencing Hearing, pp. 22-24. October 27, 2015, judgment and commitment orders were entered in criminal case numbers S2-1:14CR00083, S1-1:15CR00058, and 1:11CR00135. See DCD 112; DCD 85, criminal case number S2-1:14CR00083; DCD 72, criminal case number 1:11CR00135.

On July 22, 2016, Seratt filed an appeal of the sentence imposed in criminal case numbers S2-1:14CR00083 SNLJ and 1:11CR00135 SNLJ. Two of the issues involved enhancements imposed by the sentencing court after he waived his objection to their imposition. Appellant's Brief, pp. 23-28. The third included a claim that the sentencing court imposed a six level enhancement for the amount of loss rather than the four level enhancement that formed the basis of the total offense level. Appellant's Brief, pp. 19-22. Seratt also sought to vacate the eight month consecutive supervised release sentence. Appellant's Brief, pp. 8-18.

The appellate court affirmed the sentences imposed by this Court in an unpublished opinion filed on March 14, 2017. Appellate Case No. 16-1097, Judgment Filed. In summary, the Court of Appeals concluded that Seratt's pleas were knowing and voluntary because Seratt "confirmed that he understood his sentences on the new offenses would be at the court's discretion, that no one had promised him a particular sentence, and that he understood the terms of the plea agreement." Appellate Case No. 16-1097,

Per Curium Opinion. Seratt's challenge to the leadership-role enhancement was also rejected because he withdrew his objection to it during the sentencing hearing. Appellate Case No. 16-1097, Per Curium Opinion.

Seratt filed this timely claim of ineffective assistance of counsel pursuant to Title 28, United States Code, Section 2255 on August 7, 2017. He based his claim of ineffective assistance of counsel on allegations that his counsel:

1. Provided poor plea advice regarding the pending supervised release revocation;

2. Failed to require the sentencing court to conduct a proximate cause analysis regarding the imposition of restitution in order to obtain a reduction in the loss calculation;

3. Failed to object to the imposition of the four-level leader/organizer enhancement; and,

4. Failed to object to the enhancement for obstruction of justice.

Motion under 28 USC § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, pp. 4-6. After reviewing the allegations, Seratt's memorandum of law and supplement, the affidavit of Paul D'Agrosa, and relevant case authority, this Court will dismiss defendant's motion for relief pursuant to Section 2255

## **DISCUSSION**

There is no question that Seratt had a constitutional right to effective assistance of counsel throughout the underlying case. *United States v. Luke*, 686 F.3d 600, 604 (8th Cir. 2012). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that

the trial cannot be relied on as having produced a just result." *Id*. (quoting *Strickland v. United States*, 466 U.S. 668, 686 (1984)). However, the government submits that defense counsel's representation was well within the wide range of reasonable professional assistance required by the United States Supreme Court in *Strickland v. United States*, 466 U.S. 668 (1984). To prevail pursuant to the *Strickland* analysis, Seratt must prove that his counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense. *Id*. "Failure to establish either *Strickland* prong is fatal to an ineffective assistance of counsel claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir 2011).

**<u>Counsel's Performance</u>**

For the first requirement of the *Strickland* test, "the court must apply an objective standard and 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,' *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions." *Abernathy v. Hobbs*, 748 F.3d 813, 816-817 (8th Cir. 2014)(quoting *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir.1995)). According to Seratt, his counsel erred by: (1) providing poor plea advice regarding the pending supervised release revocation; (2) failing to require the sentencing court to conduct a proximate cause analysis; (3) failing to object to the imposition of the four-level leader/organizer enhancement; and, (4) failing to object to the enhancement for obstruction of justice. In view of the totality of the circumstances and the "strong presumption that counsel's conduct falls within the wide range of

11

reasonable professional assistance," Seratt's assertions do not rise to the level of constitutional error. *Strickland v. United States*, 466 U.S. at 689, 690.

With regard to the first error assigned to his counsel, petitioner's affidavit focuses upon statements made by this Court, and the undersigned Assistant United States Attorney rather than any error by his counsel. According to Seratt, he entered the plea based upon a statement by this Court that it was inclined to impose a concurrent sentence, and the United States' position that it would not object to this Court's decision. DCD 1-2, pp. 8-9. Since Seratt represents in his affidavit that it was the statements by this Court and the government regarding the supervised release petition which induced his plea of guilty, Seratt has not produced a cognizable claim that his attorney's reliance upon the representations was outside the wide range of professionally competent assistance.

By the same token, Seratt fails to raise a cognizable claim regarding the loss calculation. As an initial matter, the government notes that Seratt stipulated that the loss calculation was two levels higher than that upon which he was sentenced. DCD 80, criminal case number 1:15CR00058 SNLJ, p. 10. Specifically, Seratt agreed that the losses associated with his criminal conduct exceeded $30,000.00. DCD 80, criminal case number 1:15CR00058 SNLJ, p. 10. The knowing and voluntary plea of guilty and his colloquy that the loss to the Social Security Administration exceeded $24,000.00 clearly belies his new assertion that the loss was less than $5,000.00.[2] In view of the stipulated

---

[2] DCD 1-3, p. 1; PSR, p. 16. The Notice of Overpayment was sent to Seratt by the administrative agency on August 9, 2013 with regard to the period of January 2013 through July 2013. At the conclusion of the criminal investigation, the administrative agency adjusted the period of the overpayment to begin October 15, 2009.

facts and the relevant case authority, Seratt's ineffective assistance claim cannot succeed because Seratt's argument regarding the calculation of loss is without merit. *Johnson v. United States*, 860 F. Supp. 2d 663, 731 (N.D. Iowa 2012).

First, contrary to Seratt's representations, a proximate cause analysis was not required to establish the amount of restitution because Seratt stipulated that the actual loss to the Social Security Administration exceeded $24,000.00. Furthermore, when given the opportunity to object to that conclusion in the presentence report regarding the victim impact, Seratt made no objection prior to, or during the sentencing hearing. TR. Sentencing Hearing, pp. 4, 9-10. His stipulation that the Social Security Administration was directly, and proximately, harmed in the amount in an amount in excess of $24,000.00, as well as his lack of objection to the loss calculation, negated the need for a proximate cause analysis. See, 18 U.S.C. §3663A(a)(2).

Second, the amount of restitution ordered has no bearing upon the loss calculation because loss is based upon the greater of actual or intended loss. U.S.S.G. §2B1.1 Application Note 3(A). In the case at bar, the intended loss exceeded $10,000.00 for a four-level enhancement based upon the amount of disability benefits Seratt would have received, but for the discovery of the fraudulent conduct. *United States v. Lemons*, 792 F.3d 941, 950 (8th Cir. 2015). A reasonable conclusion that the defendant intended to receive benefits to which he was ineligible based upon his resources until his death,[3] was

---

Thus, the relevant conduct period to which Seratt stipulated began more than 45 months before that contemplated in the overpayment letter.

[3] Https://www.ssa.gov/ssi/text-eligibility-ussi.htm. A disabled individual may receive benefits under the Supplemental Security Income program until the age of 65 if he lacks resources. At age 65, an individual who lacks resources may receive benefits under the program regardless of the existence of a disability.

well within the discretion of this Court without the presentation of additional evidence of *mens rea*. *Id*. Because the intended loss would far exceed $10,000.00 as a matter of law, Seratt's argument lacks merit, and his counsel was not ineffective for raising this argument.

Finally, Seratt cannot prevail in his claim that his counsel's conduct was outside the wide range of professionally competent advice for not maintaining an objection to the four-level aggravated role adjustment or for not objecting to the two-level adjustment for obstruction of justice. Scrutinizing counsel's performance under a highly deferential standard, there is a strong presumption that defense counsel's activities fell within the wide range of reasonable professional assistance because "[c]apable lawyers evaluate not only what they ought to do, but what they ought not to do." *Davis v. United States*, 858 F.3d 529, 532 (8th Cir. 2017); *Stanley v. Schriro*, 598 F.3d 612, 636-637 (9th Cir. 2010).

In the case at bar, counsel was capable and provided competent legal assistance by negotiating an agreement prior to the sentencing hearing wherein Seratt would withdraw his objection to the enhancement for his role in the offense, and the United States would withdraw its objection to the reduction for acceptance of responsibility. While defense counsel could have proceeded with the objection, he recognized that the facts of the case would likely lead to a finding by this Court that Seratt was an organizer or leader of a criminal activity that was otherwise extensive. TR. Sentencing Hearing, p. 8. After discussion with his attorney, Seratt advised this Court that he discussed the issue with his attorney, trusted counsel's judgment, and would withdraw his objection as a practical matter. TR. Sentencing Hearing, pp. 7-10. In light of the contemporaneous

evidence substantiating Seratt's expressed preference to withdraw his objection, the *post hoc* assertion set forth in the habeas petition of what he would have done, but for counsel's representation, should be set aside. *Lee v. United States*, ___U.S.___, 137 S.Ct. 1958, 1967 (2017).

Defense counsel also demonstrated competent representation by not objecting to the two-level enhancement for obstruction of justice. Contrary to Seratt's assertion, imposition of the enhancement did not result in double-counting. Pursuant to Application Note 8 of U.S.S.G. §3C1.1, "if a defendant is convicted of an obstruction offense and an underlying offense to which the obstructive conduct related, the counts are grouped pursuant to U.S.S.G. § 3D1.2. The offense level for that group is the offense level for the underlying offense increased by the two-level enhancement for obstruction of justice, or the offense level for the obstruction offense, whichever is greater." *United States v. Perrin*, 551 F. App'x 694, 696 (4th Cir. 2014)(unpublished)(citing U.S.S.G. § 3C1.1 Application Note 8). Because the theft of government funds counts yielded the higher offense level, it was used to calculate the offense level for the group, and the obstruction enhancement was properly applied to that calculation. *Id*. Consequently, Seratt's claim of ineffective assistance of counsel based upon his counsel's failure to object to the two-level enhancement for obstruction of justice cannot succeed where the argument is without merit.[4] *Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010).

**Prejudice**

---

[4] See, Thompson v. United States, 2017 WL 4125650, *4-5 (8th Cir. 2017); DCD 94, p. 8. Seratt's denials of his engagement in witness tampering as set forth in his affidavit contradict his stipulation that he "knowingly used corrupt and misleading conduct toward K.S. with the intention that she would withhold testimony and evidence from a federal grand jury on April 10, 2015."

15

Even though Seratt's failure to establish the first of the *Strickland* prongs is fatal to an ineffective assistance of counsel claim, neither can he prevail under the second prong. *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir 2011). The totality of the evidence does not support a finding of a "reasonable probability that, 'but for counsel's errors,' the result would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). The appellate court for this circuit defines "reasonable probability" as "a probability sufficient to undermine confidence in the outcome. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result.'" *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014)(quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). In the case at bar, Seratt lacked a reasonable probability that he would prevail as a matter of law even if his counsel had: (1) given different advice regarding the supervised release revocation petition; (2) requested that this Court engage in a proximate cause analysis; (3) maintained his objection to the four-level enhancement for role in the offense; or, (4) objected to the enhancement for obstruction of justice. *Davis v. United States*, 858 F.3d 529, 532 (8th Cir. 2017).

With regard to the first claim, Seratt had signed the plea agreement, and begun his colloquy before the issue of his supervised release status was broached by this Court. TR. Change of Plea Hearing, p. 19. When a defendant claims that his counsel's deficient performance caused him to accept a plea, he must demonstrate by a reasonable probability that he would have insisted on going to trial. *Thompson v. United States*, 2017 WL 4125650, *4. Rather than considering the *post hoc* assertions from Seratt about how he would have pleaded, this Court should look to contemporaneous evidence to

substantiate his expressed preferences. *Id*.

Such evidence is apparent from a very cursory review of the change of plea transcript. During the plea colloquy, this Court was careful to ensure that Seratt was entering his guilty plea because he was guilty. TR. Change of Plea Hearing, pp. 36-41. When asked about each of the counts of conviction, Seratt affirmed his guilty to the charged conduct. TR. Change of Plea Hearing, pp. 36-41. His only concern was whether he would be able to present mitigating circumstances at the sentencing hearing. TR. Change of Plea Hearing, p. 38. When this Court assured him that he would have the opportunity to do so, Seratt said that there was no question that he had engaged in the stipulated conduct. TR. Change of Plea Hearing, pp. 38-41.

In particular, Seratt was told that there was a *likelihood* that the sentence for the 2014 and 2015 indictments would be run concurrently with the revocation sentence. There were no promises made to him. Rather, Seratt affirmed his desire to proceed with his guilty plea prior to, and after the Court's statement. With the benefit of hindsight, Seratt may not have pled guilty if he knew that the sentences would be run consecutively to one another. However, at the time of his change of plea, the contemporaneous evidence establishes that Seratt was willing to proceed with the guilty plea without any guarantee that the sentences would be run concurrently to one another. Without any contemporaneous evidence to support his *post hoc* assertion that he would not have pleaded guilty absent his attorney's advice regarding the revocation sentence, Seratt's ineffective assistance of counsel claim must fail. *Id*.

To establish prejudice with regard to the final three arguments, Seratt must prove that

17

his claims are meritorious. *United States v. McHenry*, 849 F.3d 699, 706 (8th Cir. 2017). Of paramount importance to consideration of Seratt's claim that the restitution and loss calculation were overstated is the fact that he admitted to defrauding the Social Security Administration of more than $24,000.00. In view of his stipulation, there was no need of a proximate cause analysis. Furthermore, Seratt's reliance upon the initial overpayment calculation of $4,611.00, ignores the reality that a hearing on the matter would have established by a preponderance of the evidence that the actual loss was as calculated by the probation office. Without a reasonable probability that a proximate cause analysis of the totality of Seratt's conduct would have resulted in the actual loss determination he suggests, he cannot demonstrate that he was prejudiced by the representation he received.

As to the remaining arguments, Seratt cannot prevail through the use of vague and conclusory allegations. *United States v. Picazo*, 2017 WL 831433, *3 (W.D. AR 2017). His failure to specify what evidence existed at the time of sentencing supporting his position, and reliance upon *post hoc* statements are insufficient in establishing the prejudice prong of *Strickland*. *Id*. Instead, the representations set forth in his affidavit contradict his prior sworn statements.[5] Consequently, Seratt "completely fails to specify what evidence existed that, if counsel had presented it at sentencing, would have demonstrated" the inappropriateness of enhancements for his role in the offense and for

---

[5] DCD 94, pp. 7-8. "Defendant's involvement with the companies extended to instructing individuals who had been designated as corporate officers for Ozark River Farms, Serna Collections, Zero Energy Based and Solar Solutions as to the manner in which they should respond to queries by investigators for the Social Security Administrators and court orders for the production of corporate documents. On Apri l 10, 2015, this included obtaining, on behalf of K.S., a motion to quash a federal grand jury subpoena through which the government sought business records of companies defendant directed. With the intention of causing K.S. to withhold the records from the federal grand jury, defendant instructed her to mail the motion to quash he procured for her to the Clerk for the United States District Court for the Eastern District of Missouri and the United States Attorney's Office.

obstruction of justice. *Id*. Even absent the evidence that the government would have presented during the sentencing hearing, Seratt's stipulation demonstrated his obstruction of justice with regard to K.S., and that his leadership and direction of K.S. in a scheme that was otherwise extensive. DCD 94, pp. 3-8.

The government also notes that Seratt did not specifically object to facts supporting the imposition of the enhancements set forth in the presentence investigation report. To the extent that the facts set forth in paragraphs 14 through 34 establish Seratt's leadership and direction in a scheme involving five or more people or that was otherwise extensive, and engaged in obstruction of justice, those facts have been admitted by Seratt. *United States v. Picazo*, 2017 WL 831433 at *4. Since the record reveals a preponderance of evidence through which this Court could have based its imposition of the enhancements for role in the offense and obstruction of justice, Seratt cannot prove that he was prejudiced by the decisions of his counsel. *United States v. Vazquez-Munoz*, 453 F. Supp. 2d 1078, 1092 (N.D. IA 2006). Consequently, his vague and conclusory allegations fail to establish that he was denied effective representation of counsel.

## CONCLUSION

The petitioner's claims as expressed above are inadequate of their face and the record affirmatively refutes the factual assertions upon which they are based. *Anjulo-Lopez v. United States*, 541 F.3d 841, 817 (8th Cir. 2008). Therefore Seratt is not entitled to an evidentiary hearing on his Section 2255 motion. *Garcia v. United States*, 678 F.3d at 1014. Accordingly, this Court denies Seratt's petition for relief pursuant to Title 28, United States Code, Section 2255 based upon the record before it.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Seratt has not made a substantial showing of the denial of a federal constitutional right.

Dated this 5th day of April, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE